Cuhia, per Evans, J.
To understand what was the charge to the jury, it will be necessary to state my views of the law, applicable to the case made by evidence. Archer had been the owner of the negroes at one time, and to divest him of his title, it was necessary the defendant should have shown some contract whereby his title had been transferred to Lawhon, or that he had done some act by means of which Lawhon’s creditors had been deceived and defrauded. This last point alone it is necessary to consider. This question involves two distinct propositions: 1st, Has Cherry, the creditor of Lawhon, been defrauded ? 2d, has this been accomplished by reason of any act of Archer’s ? In this case, the possession of Lawhon as proved, was such as would in law be construed a gift even in a controversy between him and Archer, but for the fact which was proved mainly by Law-hon himself, that the negro, came into his possession as a loan; others however who knew nothing of this understanding between the parties, had a right to regard Lawhon as the owner. Strictly speaking, Lawhon held the negro as a loan, but his possession was such as held him out to the world to be the true owner of the property. I take it to be well settled by a number of decisions, that if Lawhon, thus in possession, acquired a credit upon the faith and confidence that Sarah and her children belonged to him, a creditor who-trusted- under these circumstances, has a right to subject the property to the payment of his debt. In this view of the' case, it is wholly immaterial whether Archer intended to defraud or not, and in justice to him I ought to say no such imputation was cast on him at the trial. It is sufficient that the creditor has been deceived, and that such deception has been *78 the result of Archer’s permitting Lawhon to have the negro in his possession, under such circumstances as would authorise others to believe he was the owner. But to give a: creditor the right to subject Archer’s property to the payment of Lawhon’s debts, it must be made to appear that such creditor, in truth and in fact, would be defrauded, if Archer were allowed to abstract these negroes from the fund to which the creditor had a right to look for payment when Lawhon became his debtor. To place Lawhon’s creditor in this position, I think it should be made to appear to the satisfaction of the jury : 1st. That he is a subsequent creditor without notice, for if his debt had been contracted before the property went into Lawhon’s possession, or if he knew the property was a loan and not a gift, there is no pretence to say he trusted on the faith, that Lawhon was the ownqr, or had been deceived by his apparent ownership. I do not say the notice to the creditor should be explicit notice, such as is required by the case of Tait v. Crawford, to dispense with the recording of deeds. But to deprive a creditor of his position as a subsequent creditor, some evidence must be given to satisfy the jury that he did know, or by the exercise of ordinary diligence he might have known, that Lawhon’s possession was a mere loan. 2d. That the creditor trusted Lawhon on the faith and belief the property was his. This is a question of fact, and no definite rules can be laid down as to the evidence necessary to establish it. The jury must be left to draw their conclusions from all the facts given in evidence. On the trial, I illustrated thistf position by saying, if Cherry did not know that the negroes were in Lawhon’s possession, he could not have trusted him on the faith that he was the owner. So, also, I would say, if the jury were satisfied from any other fact proved on the trial, that Cherry had not been deceived by Lawhon’s apparent ownership, or had not trusted him in reference to this, as well as the other property in his possession, then these negroes of Archer’s ought not to be subject to Lawhon’s debts.
I have thus, as intelligibly as I can, endeavored to explain and illustrate the principles of law which apply to the case. I intended to charge the jury in conformity with the opinions herein *79 expressed. The counsel for the plaintiff, in whose candor I have confidence, think I was misunderstood. If I could believe so, I would, without hesitancy, agree to a new trial. Upon a careful review of my notes of' the charge, I am satisfied the legal principles were fully explained and' understood by the jury. — The motion is therefore refused.
Whitner and Henry, for the motion.
Young and Perry, contra.
Gantt, Richardson, Butler, Earle and O’Neall, Justices, concurred.